RECEIVED
IN ALEXANDRIA, LA.
APR 22 2010
TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| CATALYST OLD RIVER HYDROELECTRIC LIMITED PARTNERSHIP | CIVIL ACTION NO. 08-1928 |
| VERSUS | JUDGE TRIMBLE |
| ARCHER-DANIELS-MIDLAND COMPANY, ET AL. | MAGISTRATE JUDGE KIRK |

---

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by defendants American River Trasnportation Company ("ARTCO") and Ingram Barge Company ("Ingram").[1] For the reasons expressed below, the court finds that defendants' motion should be GRANTED and that all claims against them by plaintiff should be dismissed with prejudice.

I.  BACKGROUND

This suit arises out of a maritime collision between two vessels on the Mississippi River at about 4:30 p.m. on December 24, 2007.[2] The M/V DAN MACMILLAN, owned by defendant ARTCO, was southbound on the river pushing forty-two (42) loaded barges.[3] The M/V JOHN M. DONNELLY, owned by defendant Ingram, was northbound on the river pushing forty-two (42)

---

[1] R. 30.

[2] The court is vested with original jurisdiction as to any civil case of admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

[3] Id. at p. 1.

barges, some of which were not loaded.[4]

The collision between these two vessels occurred approximately three (3) miles from the intake canal for the Sidney J. Murray Hydroelectric Station ("Station"), located in Concordia Parish and owned by plaintiff Catalyst Old River Hydroelectric Limited Partnership ("Catalyst").[5] The intake canal directs water into the station's eight (8) turbines in order to produce electricity.[6]

Barge TILC-37, towed by the M/V DAN MACMILLAN, broke loose from the other barges and floated toward the station's intake canal.[7] Once in the intake canal, the barge was carried by the current and came to rest on the canal's eastern bank, near the station.[8] In order to decrease the flow of water toward the turbines, Catalyst shut down six (6) turbines and reduced the power to the two (2) remaining turbines to minimum capacity.[9] Thereafter, another vessel was able to enter the intake canal and eventually tow the damaged barge away from the station where a barge crane could unload the barge's cargo so that it could safely re-enter the Mississippi River.[10] Catalyst restarted its dormant turbines and restored its two running turbines to normal capacity at 6:33 p.m. on December 25, 2007.

Catalyst's suit alleges that it lost $388,110.00 in production capacity during the barge

---

[4] Id.

[5] Id.; State court petition [R. 1-2] at ¶ 5.

[6] Id. at ¶ 5.

[7] R. 30 at p. 2.

[8] R. 1-2 at ¶ 6.

[9] Id. at ¶ 7.

[10] Id. at ¶¶ 7-10.

recovery effort and seeks reimbursement of its economic loss.[11] While Catalyst's state court petition seems to suggest that additional damages may be at issue depending on the content of the sole expert report on the incident, prepared by Fred Budwine at the request of ADM and Ingram, Catalyst now concedes that it only seeks economic damages in the amount specified in its state court petition.[12]

Defendants' joint motion for summary judgment asserts that dismissal of plaintiff's claim for economic damages is required under substantial jurisprudence denying economic damage claims in maritime tort cases when the plaintiff claims no physical damage to property.[13] We address this motion below.

## II.  APPLICABLE STANDARD

Summary judgment is mandated when the

> pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[14]

In reviewing such evidence, the court will draw all justifiable inferences in favor of the non-moving party.[15] An issue of fact is "genuine" when its resolution determines the non-moving party's

---

[11]Id. at ¶ 12.

[12]R. 36 at pp. 5-6. The record shows that Catalyst has been given a copy of Budwine's report, mooting its prior motion to compel response to discovery [R.20, 22].

[13]R. 30-1.

[14]Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[15]Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

entitlement to relief.[16]

Once the movant has demonstrated "an absence of evidence to support the non-moving party's case," the burden shifts to the non-moving party to come forward with specific facts showing a genuine issue of fact for trial.[17] Conclusory allegations and denials, speculation, improbable references, unsubstantiated assertions and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue of fact necessitating trial.[18] The court will not assume that the non-moving party will meet its burden in the future, as such party is obligated to respond affirmatively to a motion for summary judgment and may not rest upon the pleadings without specific factual allegations in support of these claims.[19]

Although the movant must demonstrate a lack of evidence as to one or more necessary elements of the non-moving party's case, it is not necessary that the movant negate the elements of the non-moving party's case.[20] If the movant fails to meet this initial burden, the motion must be denied, regardless of the non-moving party's response.[21]

---

[16] Anderson, 477 U.S. at 248.

[17] Celotex, 477 U.S. at 325; Matsushida Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[18] SEC v. Recile, 10 F.3d 1093, `097 (5th Cir. 1993).

[19] Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. National Wildlife Federation, 497 U.S. 871, 888 (1990)).

[20] Id., citing Celotex, 477 U.S. at 323 and Lujan, 497 U.S. at 885-86.

[21] Id.

III. ANALYSIS

Defendants assert that plaintiff's economic damages claim fails as a matter of law and that no issue of material fact exists as to defendants' liability in this matter. Defendants point to the U.S. Supreme Court's decision in Robins Dry Dock v. Flint[22] and numerous Fifth Circuit Court of Appeals decisions in line with that ruling as definitive proof that, absent a showing of physical damage to property, plaintiff may not recover economic damages stemming from a maritime tort.[23]

In Robins, the Supreme Court considered whether or not the charterer of a steamship could recover economic damages when the steamship it contracted to charter was negligently damaged by the dry dock company and, as a result, unavailable for charter for approximately two (2) weeks while its propeller was repaired. The Court denied recovery on the basis that the chartering party did not possess legally protected property rights in the steamship and, thus, its claim was only for negligent interference with contract rights.[24] The Court applied the general rule, already well-settled at that time, that damage to the property of another does not give rise to a right of action for third parties who contracted with the property owner.[25] The Court further reasoned that the rights available to the third party are derived from the contract, not the property.[26]

The Fifth Circuit considered the application of Robins in State of Louisiana, ex rel Guste v.

---

[22] 275 U.S. 303 (1927).

[23] R. 30, 39.

[24] 275 U.S. at 308.

[25] Id. at 309.

[26] Id.

5

M/V TESTBANK,[27] a case involving a collision between a bulk carrier and a container ship in the Mississippi River gulf outlet.[28] As a result of the collision, both hydrobromic acid and pentachlorophenol ("PCP") were spilled and forty-one (41) lawsuits were filed by various parties connected with the shipping and fishing industries in that area.[29]

Applying the ruling in Robins, the district court granted summary judgment as to the majority of economic damage claims which were not accompanied by physical damage to property.[30] The district court denied summary judgment as to unaccompanied economic damage claims by commercial fishermen who fished in the affected area, finding that these interests were worthy of special protection akin to that afforded to seamen.[31] A Fifth Circuit panel affirmed the district court's grant of summary judgment based on Robins. On rehearing en banc, the appellate court reiterated the "bright line" rule that prohibits recovery of economic damages absent physical damage to property.

Plaintiff asserts that its claim for economic damages is not barred by Robins for several reasons. First, plaintiff claims that it did, in fact, suffer physical damage to its property when the barge entered its intake canal and became lodged there until removed the next day.[32] Plaintiff urges the court to consider that, as a conduit for directing the flow of water into its turbines, the intake

---

[27] 752 F.2d 1019 (5th Cir. 1985).

[28] Id. at 1020.

[29] Id. at 1021.

[30] Id.

[31] Id.

[32] R.36 at pp. 2-3.

canal was damaged by the barge in that, while the barge was there, the canal could not perform its function.[33] Plaintiff explains that the only reason no pecuniary damages are sought in conjunction with this physical damage is that it did not incur any costs in removing the obstructing barge because defendants paid for the barge removal operation.[34]

Defendants point to Reserve Mooring, Inc. v. American Commerical Barge Line, LLC[35] as authority that plaintiff's claim must fail. In that case, plaintiff operated a midstream mooring facility in the Mississippi River.[36] A loaded barge, owned by defendant, sank while moored at plaintiff's facility, causing the facility to be blocked for several months while salvage operations were conducted to clear the sunken barge from plaintiff's property. Plaintiff sought economic damages for lost income. Defendants twice moved for summary judgment under the rule of TESTBANK, pointing out that plaintiff's claim was strictly economic and that plaintiff did not dispute that it suffered no physical damage to the buoys or anchor piles which comprised the mooring facility. The district court denied these motions.

On appeal, the Fifth Circuit rejected plaintiff's argument that the presence of the sunken barge in its mooring facility constituted physical damage to property.[37] The court found that plaintiff's claims were for "business expectancy" and, citing other similar cases, reversed the district

---

[33] Id. at p. 9.

[34] Id. at pp. 5-6, 10.

[35] 251 F.3d 1069 (5th Cir. 2001).

[36] Id. at 1070.

[37] Id. at 1071-72.

court's ruling and granted summary judgment as to plaintiff's claims against defendant.[38]

Plaintiff in the instant case seeks to distinguish its claim from the facts of Reserve Mooring, arguing that plaintiff had no proprietary interest in the location where the barge sank in that case and, here, plaintiff owns the intake canal at issue and, therefore, asserts a proprietary interest which was physically injured by the stray barge. We reject this argument.

Plaintiff's attempt to characterize the presence of the errant barge in its intake canal as "physical damage" is substantively the same as that advanced and rejected by the Fifth Circuit in Reserve Mooring. Plaintiff shows no actual physical change to its turbines or other structures and admits that removal of the barge is its sole basis for its allegation of physical damage to property. As did the Fifth Circuit in Reserve Mooring, we find that plaintiff's only loss was a "business expectancy," which is unrecoverable, absent physical loss, in unintentional maritime tort cases under the rule of Robins as interpreted in this circuit.

Plaintiff next argues that the exception to TESTBANK for commercial fishermen should apply to it because, like those fishermen, it makes use of the "public" property interest in the Mississippi River. Plaintiff cites no authority under which this court might extend the narrow exception for commercial fishermen to it, particularly in light of the numerous cases involving maritime accidents and interference with commercial enterprises, in which the courts have refused recovery for economic loss.[39]

Plaintiff next argues that its damages were entirely forseeable and that its claim does not

---

[38]Id. at 1072.

[39]See, e.g., In re Taira Lynn Marine Limited Number 5, LLC, 444 F.3d 371 (5th Cir. 2006); Getty Refining and Marketing Co. v. MT FADI B, 766 F.2d 829 (3rd Cir. 1985);

draw the court into an endless array of potential claims and, thus, does not violate the policy considerations surrounding the courts' insistence on physical damage to property as a prerequisite for economic loss recovery. We reject plaintiff's arguments under forseeability, as the Fifth Circuit has continually rejected a forseeability approach in favor of preserving the "bright line" standard of Robins and TESTBANK.[40]

Similarly, we reject plaintiff's attempt to state a claim for trespass under Louisiana law. As the Fifth Circuit explained in TESTBANK,

> claims arising out of a collision on a navigable waterway
> of the United States and the resulting damages...are within
> the admiralty and maritime jurisdiction of the federal courts.[41]

Accordingly, state law is not applied to such claims and plaintiff's argument as to trespass is without merit. To the extent that plaintiff argues that trespass constitutes physical damage to property sufficient to enable economic loss recovery, we also reject that argument. We find that presence of the barge without permission is not enough under the Fifth Circuit's analysis in Reserve Mooring.[42]

### III.  CONCLUSION

Given our reasoning above, the court finds that defendants have demonstrated that no genuine issue of fact exists which, if decided in plaintiff's favor, would entitle it to prevail on its claim for economic damages in this case. Specifically, we find that plaintiff fails to demonstrate that it

---

[40] Reserve Mooring, 251 F.3d at 1071.

[41] TESTBANK, 752 F.2d at 1031.

[42] Reserve Mooring, 251 F.3d at 1071-72.

sustained physical damage to property as a prerequisite to recovery for its economic loss claim against defendant. Plaintiff's claim fails under the "bright line" standard announced by the U.S. Supreme Court in <u>Robins Dry Dock & Repair Co. v. Flint</u>[43] and applied by the U.S. Fifth Circuit Court of Appeals in <u>State of Louisiana, ex rel Guste v. M/V TESTBANK</u>.[44]

Accordingly, we find that summary judgment dismissing plaintiff's claim against defendants is now appropriate. The court will issue a judgment in conformity with these findings.

**Alexandria, Louisiana**
**April 2̲2̲, 2010**

　　　　　　　　　　　　　　　　　／s／ James T. Trimble
　　　　　　　　　　　　　　　　　JAMES T. TRIMBLE, JR.
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE

---

[43] 275 U.S. 303 (1927).

[44] 752 F.2d 1019 (5th Cir. 1985).